UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KITTY L. ATKINS, MARY F. SHEPARD, | ) | |
|---|---|---|
| TOMMY SHEPARD and | ) | |
| ANDREW SHEPARD, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:12-CV-77-PLR-HBG |
| | ) | |
| AARON JAMES FOSTER and | ) | |
| RONALD JAMES FOSTER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case arises out of an automobile accident that occurred on April 4, 2011, in which a 2006 Chrysler minivan driven by Aaron Foster collided with a vehicle driven by Kitty Atkins. The minivan driven by Aaron Foster was owned by his father, Ronald Foster. Defendant Ronald Foster has moved for summary judgment on plaintiffs' claims against him. The plaintiffs have responded in opposition.[1] The issue before the court is whether Defendant Ronald Foster is liable under a theory of negligence for failing to anticipate that his adult son might take his vehicle without authority, become intoxicated, and injure plaintiffs.

---

[1] Haulers Insurance Company, having been served pursuant to the Tennessee Uninsured Motorist Statute, responds to defendant's motion for summary judgment. Plaintiffs have filed a notice adopting the response of Haulers Insurance Company [Doc. 39].

The court has carefully considered the motion and, for the reasons stated herein, finds that Ronald Foster is not liable for the actions of his adult son, and will grant Ronald Foster's motion for summary judgment.

**I. Background**

This case arises out of an automobile accident that occurred on April 4, 2011, in which a 2006 Chrysler minivan operated by Aaron Foster collided with a 2004 Dodge Neon operated by Kitty Atkins. Mary Shepard, Tommy Shepard, and Andrew Shepard were passengers in the Atkins' vehicle. Ronald Foster is the owner of the 2006 Chrysler minivan that was involved in the accident of April 4, 2011. Aaron Foster is the son of Ronald Foster.

Ronald Foster states that his son has not lived in his home for several years and was not a resident of his household on April 4, 2011. The last time that Aaron permanently lived in the Foster home was sometime in 2004, when Aaron was still in high school. When Aaron lived in the family home, he did not have a driver's license, but later obtained his license after he left the family home. After Aaron left in 2004, he got married and had a child, lived in various places, and did not return to the family home apart from occasional visits, for no longer than a month at a time. Ronald Foster did not provide his son with any financial support after he left the family home in 2004. *Id.*

After Aaron moved out of his father's house, he was arrested on three separate occasions for driving under the influence. Ronald Foster was aware of Aaron's three DUI charges and substance abuse issues.

2

In January 2009, Aaron stayed at the Foster home on a temporary basis for less than a month while he was in-between residences. During this time, Aaron was specifically instructed by his father not to drive his parents' vehicles. Despite this admonition, Aaron took one of his father's vehicles from the home without permission. When Ronald Foster discovered the vehicle missing, he reported it as stolen to the Wilkesboro Police Department. Aaron was later arrested and convicted of charges in relation to the theft of the vehicle, along with DUI/DWI. Aaron did not return to the family home for any significant length of time after January 9, 2009, although he spent an occasional night there, including a period of time over Christmas 2010, without any further incidents involving theft of his father's vehicles.

In April 2011, Aaron was residing in Hickory, North Carolina at a group home facility because of substance abuse issues. On April 3, 2011, he obtained leave from the group home to travel to Wilkesboro for a few days to attend a court hearing involving arrangements for visitation with his minor daughter. Ronald Foster picked up Aaron from his residence in Hickory, and brought him to the family home in Wilkesboro. During the drive from Hickory to Wilkesboro, Ronald told Aaron that he was not to drive or do anything with any of his vehicles. They arrived home around 8:00 p.m. and watched TV together until around 11:00 p.m., when Ronald and his wife went to bed. *Id.* Ronald Foster kept the keys for all of his vehicles on a key holder pegboard in the dining room of his home, as he had done since 1993.

Ronald Foster left his 2006 Chrysler minivan parked in the driveway of his home because he planned to drive it to work early the next morning. It was still in the driveway

when he went to bed around 11:00 p.m. In the early morning of April 4, 2011, when he got up, Ronald noticed that Aaron was not on the couch where he had been sleeping. Ronald went out to the porch to see if Aaron was outside, and noticed that the minivan was gone from the driveway. Ronald realized that the minivan had been taken by Aaron from the driveway at some point during the night without his knowledge, and he reported the minivan as stolen to the Wilkes County Sheriff's Department.

Ronald Foster later learned that Aaron had been involved in an accident in Tennessee and had been arrested in Loudon County, Tennessee, and charged with evading arrest, reckless endangerment, DUI, vehicular assault, driving on a suspended license, no seat belt, following too closely, theft of property (2006 Chrysler minivan), and one count of evading arrest. Aaron entered a guilty plea to vehicular assault, evading arrest, and theft with the Criminal Court of Loudon County, Tennessee, and was imprisoned in the Morgan County Correctional Complex in Wartburg, Tennessee.

Plaintiffs have filed the instant action against both Ronald and Aaron Foster, alleging that Ronald Foster is liable for plaintiffs' injuries under the theories of (1) negligence and/or negligent entrustment of the minivan to Aaron because he had knowledge that Aaron had prior DUI offenses and had a suspended license, but allowed Aaron access, or failed to take reasonable steps to prevent him from accessing the keys to the minivan; (2) vicarious liability under the Family Purpose Doctrine; and (3) vicarious liability under Tenn. Code Ann. § 55-10-311, which provides for *prima facie* evidence of an owner-driver agency relationship.

Ronald Foster previously filed a motion for summary judgment that was denied by the court as premature because the parties had not undertaken any discovery in the case. The court's order reserved to Ronald Foster leave to re-file the motion after the parties completed discovery. Ronald Foster now moves for summary judgment, stating that (1) he cannot be liable under a theory of negligent entrustment because there was no entrustment of the minivan by him to Aaron as a matter of law; (2) he cannot be liable under the Family Purpose Doctrine because Aaron was not using the minivan with either his express or implied consent, and was not driving the minivan in furtherance of a family purpose; and (3) there is evidence in the record which rebuts the *prima facie* presumption of the owner-driver agency relationship contained in Tenn. Code Ann. § 55-10-311. In support of his motion, Ronald Foster relies upon his previously filed Affidavit in this matter, including attachments, along with his deposition testimony.

Plaintiffs respond: (1) Ronald Foster's testimony alone is insufficient to overcome the presumption set forth in Tenn. Code Ann. §§ 55-10-311 and 312, establishing vicarious liability for the vehicle owner; and (2) because Ronald left the keys to the minivan in plain sight of Aaron and took no other steps to prevent Aaron from taking the vehicle, a reasonable juror could find that Ronald Foster was negligent.

On March 29, 2012, Aaron Foster, acting *pro se*, filed an answer to plaintiffs' complaint. Aaron stated that his father had no part in his actions of April 4, 2011, and had no idea that he had taken the minivan. Aaron further stated that he pled guilty and was convicted of stealing the minivan.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). Initially, the burden is on the moving party to conclusively show that no genuine issues of material fact exist. *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question; but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence

6

from which the jury could reasonably find for the nonmoving party. If the court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter summary judgment. *Id.; Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. Analysis

### A. Negligent Entrustment

Tennessee recognizes the tort of negligent entrustment as defined in the Restatement (Second) of Torts. *West v. East Tenn. Pioneer Oil Co.,* 172 S.W.3d 545, 554 (Tenn. 2005). Section 390 of the Restatement provides:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). Thus, to succeed on a claim of negligent entrustment, a plaintiff must demonstrate that "a chattel was entrusted to one incompetent to use it with knowledge of the incompetence, and that its use was the proximate cause of injury or damage to another. *West*, 172 S.W.3d at 554.

Plaintiffs have not responded to defendant's argument that there was no negligent entrustment of the minivan to Aaron, and the court finds that they have waived any objection to defendant's motion based on this doctrine. *See* Local Rule 7.2. Moreover, based on the facts in this case, the court finds there was no negligent entrustment of the

7

minivan by Ronald Foster to his son. Ronald testified that he kept the keys in the same place he had always kept them, and had given Aaron explicit instructions not to drive or do anything with his vehicles when he picked Aaron up on April 3, 2011. It is undisputed that Aaron took the minivan from the family home without his father's knowledge or consent. Moreover, the record shows that Aaron had not driven any vehicle owned by his father with his permission since approximately 2004. Ronald Foster testified that Aaron had neither his express nor his implied permission to drive the minivan on April 3-4, 2011, and plaintiffs have produced no evidence to contradict this testimony.

Ronald Foster further testified that he reported the vehicle as stolen to the Wilkes County Sheriff's Department immediately upon discovering that the minivan had been taken from his driveway. It is also undisputed that Aaron was subsequently charged and convicted of theft of the minivan. In addition, Aaron filed a *pro se* answer to plaintiffs' complaint admitting that he took the vehicle without the knowledge of his father. Accordingly, the court finds that there was no entrustment of the minivan to Aaron and Ronald Foster is entitled to judgment as a matter of law on plaintiffs' claim of negligent entrustment.

 **B. Family Purpose Doctrine**

The Family Purpose Doctrine was first recognized in Tennessee in *King v. Smythe*, 204 S.W. 296 (1918). This doctrine imposes vicarious liability on a head of household for the negligent operation of a motor vehicle by a family member provided that the head of the household maintains the vehicle "for the purpose of providing pleasure or comfort

8

for his or her family," and "the family purpose driver is using the motor vehicle at the time of the injury in furtherance of that purpose with the permission, either express or implied, of the owner."  *Strine v. Walton*, 323 S.W.3d 480, 489 (Tenn. Ct. App. 2010); *Camper v. Minor*, 915 S.W.2d 437, 447 (Tenn. 1996).

Plaintiffs have not responded to defendant's argument that the Family Purpose Doctrine is inapplicable in this case, and the court finds that they have waived any objection to defendant's motion based on this doctrine.  *See* Local Rule 7.2.  Moreover, the court finds that under the facts in this case, the elements for liability under the Family Purpose Doctrine cannot be met.  Assuming, *arguendo*, that Ronald Foster is considered the head of the household and the minivan was maintained by him for the purpose of providing pleasure and comfort for his family, it is undisputed that on April 3-4, 2011, Aaron was not using the minivan with the permission, either express or implied, of Ronald Foster.  Instead, the record shows that Aaron took the minivan from his father's home without his knowledge and in contravention of his father's express instructions.

Analogous to the theory of negligent entrustment, the Family Purpose Doctrine does not impose liability upon the owner of a vehicle for an unauthorized taking of the vehicle because permissive use is an essential element of the claim.  Plaintiffs have failed to point to any evidence from which a jury could find implied permission from Ronald Foster's express instructions to Aaron not to drive the vehicle.  Accordingly, the court finds the Family Purpose Doctrine inapplicable in this case, and Ronald Foster is entitled to judgment as a matter of law on plaintiffs' claim of liability based on the Family Purpose Doctrine.

9

### C. Presumption Contained in Tenn. Code Ann. §§ 55-10-311 & 55-10-312

Tenn. Code Ann. §55-10-311 provides that:

(a) In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile . . . within this state, proof of ownership of the vehicle shall be prima facie evidence that the vehicle at the time of the cause of action sued on was being operated and used with authority, consent and knowledge of the owner in the very transaction out of which the injury or cause of action arose, and the proof of ownership likewise shall be prima facie evidence that the vehicle was then and there being operated by the . . . owner's servant, for the owner's use and benefit and within the course and scope of the servant's employment.

(b) This section is in the nature of remedial legislation and it is legislative intent that it be given a liberal construction.

Further, Tenn. Code. Ann. § 55-10-312 provides:

Proof of registration of the motor-propelled vehicle in the name of any person shall be prima facie evidence of ownership of the motor-propelled vehicle by the person in whose name the vehicle was registered; and such proof of registration shall likewise be prima facie evidence that the vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit.

The two statutes in combination result in a rebuttable presumption establishing liability on the vehicle owner's part. Ronald Foster admits that he was the owner of the Chrysler minivan driven by Aaron that was involved in the accident. Thus, the presumption is triggered. However, Ronald Foster argues that there is evidence in the record which rebuts the *prima facie* presumption of the owner-driver agency relationship contained in the statute. In support of his argument, Ronald relies on (1) his deposition testimony, (2) the *pro se* answer from Aaron stating that his father had no part in his actions and had no idea that he had taken the minivan, and (3) proof of Aaron's guilty plea to charges stemming from his theft of the minivan. Plaintiffs argue that none of the

three, singularly or in combination, are sufficient to overcome the presumption established by the Tennessee statutes.

The Tennessee Supreme Court has held that a defendant may not overcome the statutorily created *prima facie* evidence of an owner-driver agency relationship by simply asserting that no consent was given. *Godfrey v. Ruiz*, 90 S.W.3d 692 (Tenn. 2002). The court reasoned that a defendant's status as an interested witness placed his credibility in question, and therefore a defendant's uncorroborated testimony that the driver was not a permissible user will not overcome the *prima facie* evidence of owner-driver agency created by the statute. However, the court went on to note that "there may be rare cases involving the application of § 55-10-311 in which summary judgment is appropriate," and therefore, the court declined to hold that "proof of ownership is always sufficient to overcome summary judgment, regardless of the facts presented by the defendants." *Id.* at 696. Thus, the court left open the possibility that "courts may grant summary judgment or a directed verdict on behalf of a vehicle's owner in a negligence case if the owner has provided evidence, other than his own testimony, that the driver was not acting as the owner's agent when the accident occurred." *Id.*

Here, there is evidence in the record, other than the testimony of Ronald and Aaron Foster, which rebuts the presumption of the owner-driver agency relationship contained in § 55-10-311. It is undisputed that Aaron was charged, convicted, and imprisoned for theft of the Chrysler minivan owned by his father. Ronald Foster has submitted certified judgments from the Criminal Court of Loudon County in support of their testimony. These judgments constitute objective evidence that Aaron was convicted

11

of theft of the minivan. The fact that Aaron submitted to a criminal conviction by admitting that he took the minivan without his father's permission is more than simply a self-serving statement. The extrinsic evidence in the record, including the theft report made by Ronald Foster, and the certified copies of the judgments rendered against Aaron in the Criminal Court for Loudon County are sufficient to rebut the *prima facie* owner-driver agency presumption as a matter of law. Accordingly, the court finds that Ronald Foster is entitled to judgment as a matter of law on plaintiffs' claim based on Tennessee Code Annotated §§ 55-10-311 and 55-10-312.

D. **Negligence**

Last, plaintiffs assert that Ronald Foster was negligent in failing to take the necessary precautions to prevent Aaron from having access to the Chrysler minivan on the night of the accident. Plaintiffs argue that Ronald Foster left the keys to the minivan in plain sight and readily accessible to Aaron. The keys were left on a pegboard in the dining room of the house. The family had always left their keys there, including during the time that Aaron lived at the residence. Plaintiffs contend that a jury could reasonably conclude that Aaron knew where the keys were located, and Ronald should have known that the keys' location provided ready access for Aaron to use them. Plaintiffs point to Aaron's history of multiple charges for driving under the influence, and his residence at a half-way house as evidence that the risk that Aaron would drive under the influence was foreseeable. Finally, plaintiffs state that Aaron had two years earlier stolen his father's car when specifically instructed not to do so. Plaintiffs conclude that a jury considering this evidence, could find that Ronald Foster was negligent for failing to secure the keys to

12

the minivan. By allowing the keys to remain in plain sight and available to Aaron, Ronald Foster created a situation that he should have foreseen that Aaron would again steal the car and become intoxicated, just as happened in 2009.

Ronald Foster responds that Tennessee law does not extend as far as holding that a private citizen can be liable for negligence when his keys are stolen from inside his home. He had instructed his son not to drive his vehicles. Aaron had returned to the family home for a limited time. Over two years had passed since Aaron had previously taken one of his father's vehicles without permission. Under these circumstances, Ronald Foster had no reason to believe that Aaron would take one of his vehicles without permission and against his express instructions.

Plaintiffs rely on a line of cases involving keys left in the ignition of a car, or left inside an unlocked car, in plain sight. Recently, several states, including Tennessee, have begun to impose liability on owners of unattended vehicles who leave their keys in, or near, their car's ignition, the car is stolen, and subsequently involved in an accident. *See, e.g., McClenahan,* 806 S.W.2d at 767. In addition, Tennessee implemented legislation making it illegal to leave a vehicle unattended without first stopping the engine, locking the ignition, and setting the brake. Tenn. Code Ann. § 55-8-162. In these circumstances, Tennessee courts have reasoned that the owner's negligence in leaving the keys in a position where a thief could easily steal the car and drive it away could be a proximate cause of the harm to the third party. *See, e.g.*, *McClenahan v. Cooley*, 806 S.W.2d 767, 771 (Tenn. 1991); *Newman v. Jarrell*, 354 S.W.3d 309 (Tenn. Ct. App. 2010).

13

In *McClenahan*, the defendant, a law enforcement officer, left his keys in the ignition of his unattended car, in a public parking lot of a shopping center. The car was stolen and later involved in an accident. Applying traditional common law principles, the court held:

> that reasonable minds can differ as to whether a person of ordinary prudence and intelligence through the exercise of reasonable diligence could foresee, or should have foreseen, the theft of an unattended automobile with the keys in the ignition left in an area where the public has access, and could likewise foresee that increased risk to the public should a theft occur.

*Id.* at 776. In *Newman v. Jarrell*, 354 S.W.3d 309 (Tenn. Ct. App. 2010), the defendant left a set of keys in his unattended vehicle, and the Tennessee Court of Appeals determined that genuine issues of material fact existed concerning the location of the keys, whether they were hidden from view, and whether the car was parked in a driveway or on the street. *Id.* at 319.

Accordingly, in the instant case, the court must determine whether Ronald Foster placing the keys to his minivan on a pegboard in his dining room, and then going to sleep, created a risk of harm to a third party. After an exhaustive search, the court has determined that there are no cases factually equivalent to the case at hand. The Tennessee cases that have extended liability to the owner of a stolen vehicle involve situations where the keys to the car were left in the ignition, or in plain sight, in an area accessible by the public. *See McClenahan,* 806 S.W.2d at 767; *Newman*, 354 S.W.3d at 309. However, because in the case at hand, Ronald Foster did not leave his keys in the

14

ignition, or even in the car; this case is factually distinguishable from *McClenahan*, and the court must make an independent determination.

The Court has not found any Tennessee cases that extend the holding of *McClenahan* and *Newman* to a private citizen for theft of a vehicle when the keys were taken from within the owner's home without the knowledge or consent of the owner. The location of the keys is an essential factor in this case. In a situation more analogous to the instant case, the Tennessee Supreme Court found that an employer was not liable under a theory of negligence in failing to anticipate that an employee might take a vehicle without authority, become intoxicated, and injure a third person. *Beckendorf v. Simmons*, 539 S.W.2d 31 (Tenn. 1976). In coming to this conclusion, the court acknowledged that the employer knew the employee drank to excess on some occasions; on one previous occasion, had used the employer's truck with permission and been involved in an accident while under the influence of intoxicants; and had his driver's license suspended or revoked as a result. In the months between the previous incident and the accident, the employer denied the employee any further permission to drive the truck for any purpose. A key to the truck was in the employer's shop, accessible to all employees. The Tennessee Supreme Court held that the foregoing facts were "insufficient to fasten personal liability upon the employer," and further held that "personal liability should not be extended to respondent, the employer, under the facts shown here, where the taking of the vehicle was unauthorized, contrary to his express instructions, and entirely without his knowledge or consent." *Id.* at 33-34. The court finds this reasoning persuasive to resolving the issue in the instant case.

15

The facts are undisputed that Aaron stole the minivan from his father's home. Ronald Foster explicitly instructed Aaron not to drive or do anything with his vehicles while he was temporarily at the home. The mere fact that he had once taken a car from the home while he resided there, two years prior, is insufficient to put Ronald Foster on notice that Aaron would take the minivan on April 4, 2011. Additionally, although Ronald Foster knew of Aaron's past problems with alcohol, nothing in the record establishes that Aaron's use was ongoing or occurring on the day he took the minivan. Finally, a claim of common law negligence requires that plaintiffs establish a causal connection between Ronald Foster's conduct and the plaintiffs' injury. *McClenahan*, 806 S.W.2d at 775.

Here, Ronald Foster, unlike the defendants in *McClenahan* and *Newman*, did not engage in any affirmative act of negligence. He did not leave the keys in the vehicle, as occurred in *McClenahan* and *Newman*. Nor did he engage in any egregious activity such that a "special circumstances" exception would warrant imposing liability on him. Rather, he simply placed the keys to the minivan on a peg board within his house, as millions of Americans do, and went to bed. Under these circumstances, the court finds it was not reasonably foreseeable that Aaron would take the keys and steal the minivan on April 4, 2011, become intoxicated, and cause injury to plaintiffs. Accordingly, the Court finds that Ronald Foster is entitled to judgment as a matter of law on plaintiffs' claims based on common law negligence.

### IV. Conclusion

For the reasons stated herein, the court hereby **GRANTS** Defendant Ronald Foster's motion for summary judgment [Doc. 36] and Ronald Foster is **DISMISSED** as a defendant in this action.

Defendant Ronald Foster's motion requesting withdrawal of the court's order referring this matter to mediation [Doc. 45] is **GRANTED.**

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**